IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Larry King,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Belk, Inc., a business entity; Brookfield Properties, LLC, a business entity; and DOES I-V,<br><br>　　　　Defendants. | C.A. No. 3:23-cv-211<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

NOW COMES Plaintiff Larry King, by and through his attorney, submitting his Complaint against Defendant Belk, Inc. ("Belk"), Defendant Brookfield Properties ("Brookfield"), and Defendant DOE I:

**JURISDICTIONAL ALLEGATIONS**

1. Plaintiff is a citizen and resident of the County of York, State of South Carolina.

2. Defendant Belk, Inc. is a North Carolina corporation with its principle place of business or headquarters located at 2801 West Tyvola Road, Charlotte, NC 28217. Belk may be served through its registered agent National Registered Agents, Inc., 160 Mine Lake Ct. Ste. 200 in Raleigh, NC 27615-6417.

3. Defendant Brookfield Properties, LLC is a North Carolina corporation with its principle place of business or headquarters located at 6131 Falls of Neuse Rd, Ste. 202, Raleigh, NC

27609. Brookfield may be served through its registered agent Frank L. Robuck, Jr., 6131 Falls of Neuse Rd., Ste. 202, Raleigh, NC 27609.

4. Subject matter jurisdiction is before this Court in accordance with Diversity Jurisdiction as enumerated in 28 U.S.C. § 1332.

5. Venue is proper before this Court as all matters complained of occurred

6. On or about July 11, 2022, Plaintiff was shopping with his significant other at the Belk store located at the Carolina Place mall in Pineville, North Carolina (11025 Carolina Place Parkway, Pineville, NC 28314-8370). Plaintiff went into an elevator (hereinafter "subject elevator") on the second floor of the Belk store in Carolina Place mall to descend to the first floor level due to the escalator from the second floor to the first floor being out of service. There were signs indicating the escalator was out of service and also indicating that the elevator Plaintiff used was the method for patrons to descend to the first floor. When Plaintiff was in the entranceway of the elevator, the elevator doors closed upon his body and resulted in injuries to his body.

7. The elevator door did not have functional motion sensors in that the doors closed onto Plaintiff's body without detecting his presence. Furthermore, the elevators made no audible sounds prior to closing in upon him. The elevator's motion sensors were defective and there were no other safety mechanisms in place to warn a patron. The elevator was a two-door/two-panel elevator which had the elevator doors closing and opening from both sides of the elevator. The two panels would meet in the middle of the elevator entranceway upon closing.

8. Plaintiff was injured as a result of the elevator doors in question closing upon him.

## CAUSE OF ACTIONS AS TO BELK
### (1) Negligence *Per Se,* (2) Negligence, and (3) *Res Ips Loquitur* as to Belk

9. Plaintiff repeats and realleges each and every allegation of the proceeding paragraphs as if fully set forth herein verbatim.

10. According to the Certificate of Service to the door of the subject elevator, Belk is both the owner and the operator of the subject elevator.

### Negligence *Per Se*

11. In owning and operating an elevator in the State of North Carolina that is open to the public, Belk had the duty to comply with the Elevator Safety Act of North Carolina (hereinafter "Act") as enumerated in N.C.G.S.A. § 95-110.1 *et. seq.*

12. Under the Act, Belk was prohibited from operating, permitting to be operated or using the subject elevator if Belk knew or reasonably should have known that such operation would expose the public to an unsafe condition that was likely to result in personal injury, and specifically to personal injury of the Plaintiff.

13. Belk knew or should have known that having a nonoperational, inactive, or defective motion sensor in the subject elevator would lead to the injuries sustained by Plaintiff.

14. Belk knew or should of the nonoperational, inactive, or defective motion sensor had the inspections and maintenance standards enumerated in the Act were adhered to.

15. Plaintiff is in the category of person the Act is designed to protect, and because Belk's violation of the Act led to his injuries, Belk is liable to Plaintiff for its negligence *per se*.

### Negligence

16. Defendant Belk had a duty to use ordinary and reasonable care in the maintenance, operation, installation, testing, use, and design of the subject elevator. Defendant further

had a duty to use reasonable and ordinary care to prevent unreasonable risk of bodily harm to its invitees, and namely Plaintiff.

17. Belk breached these duties in one or more of the following particulars:

    a. By operating an elevator in its store which was open to the public that had a nonoperational or defective motion sensor;

    b. In failing to warn customers of the nonoperational and defective motion sensor;

    c. In failing to use ordinary and reasonable care to inspect the elevator to be made aware of this issue;

    d. In having actual knowledge of the defective motion sensor and failing to remedy the dangerous condition;

    e. In having actual knowledge of the defective motion sensor and failing to have sufficient warnings to the public to prevent the foreseeable injury it could, and did, cause;

    f. In failing to properly inspect the elevator in a reasonable manner as required by the Act and as required under a standard of reasonableness;

    g. In failing to have updated, functional and reasonably safe elevator equipment, including but not limited to have updated, functional and reasonably safe motion sensors or other warning mechanisms related to the elevator doors closing; and

    h. In failing to ensure that the elevator, which Belk itself required customers to use with the escalator being out of order, was in a reasonably safe condition.

## *Res Ips Loquitur*

18. Upon the information and belief of Plaintiff, the subject elevator was under the exclusive control and maintenance of Belk.

19. An elevator door closing upon an individual due to defective or inactive motion sensors, and specifically the subject elevator's doors closing upon Plaintiff, is not an event that would ordinarily happen in the absence of negligence on Belk's part as the owner and operator of the subject elevator.

20. The elevator door closing upon Plaintiff resulted in injury to Plaintiff.

21. Belk is liable to Plaintiff under the doctrine of *Res Ips Loquitur* for the damages discussed more fully below.

## CAUSE OF ACTIONS AS TO BROOKFIELD
**(Negligence/Premises Liability as to Brookfield)**

22. Plaintiff repeats and realleges each and every allegation of the proceeding paragraphs as if fully set forth herein verbatim.

23. At all times relevant herein, Brookfield was the property management company of Carolina Place mall.

24. As the property management company of the Carolina Place mall in which the relevant Belk store was located, Brookfield had a duty to maintain the premises within the mall in a reasonably safe condition.

25. Brookfield breached this duty to Plaintiff in the following particulars:

    a. In failing to ensure that no foreseeable and unreasonable risks of harm existed within the premises of Belk;

b. In failing to provide any warnings to customers that the subject elevator, which was the only method of travel between the second floor and the first floor with the escalator being out of order, had a defective motion sensor.

## CAUSE OF ACTION AS TO DOE I
**(Negligence)**

26. Plaintiff repeats and realleges each and every allegation of the proceeding paragraphs as if fully set forth herein verbatim.

27. To the extent that Defendant Belk contracted a third party with the installation or maintenance of the subject elevator and/or the motion sensor and closing mechanisms therein, Plaintiff alleges that this third party was under a duty to use ordinary and reasonable care in the maintenance, operation, installation, testing, use, and design of the subject elevator.

## DAMAGES

28. As a direct and proximate result of the negligence, carelessness, recklessness, and negligence *per se* of the Defendants above, Plaintiff:

    a. Was severely, seriously, and painfully injured;

    b. Has incurred, and/or will continue to incur, expenses for the services of doctors, nurses, hospitals, chiropractors, therapists, medicines, and/or special equipment;

    c. Was subjected to extreme pain, mental anguish, suffering, and discomfort over a long period of time;

    d. Has incurred, and/or will continue to incur, pain, suffering, and loss of enjoyment of natural life;

e. Has suffered, and/or will continue to suffer emotional distress, embarrassment, humiliation, and anxiety;

f. Has experienced, and/or will continue to experience, physical impairment;

g. Has been and/or will be prevented from attending to Plaintiff's usual and ordinary social and domestic activities and/or responsibilities;

29. On information and belief, Plaintiff is entitled to judgment against the Defendants for all actual, consequential, special, and punitive damages in an appropriate amount as determined by a jury.

WHEREFORE, Plaintiff prays and demands that judgment be entered against the Defendants for actual damages in an amount to be determined by a jury, for punitive damages, for the costs incurred in bringing this action, and for such other and further relief as this Court may deem just and proper under the circumstances.

Respectfully submitted,

s/Kevin C. Corrigan
Kevin C. Corrigan, Fed. Id. 10337
Schiller & Hamilton, LLC
P.O. Box 36365
Rock Hill, SC 29732
Telephone: (803) 366-0333
Facsimile: (803) 366-0339
ccorrigan@schillerhamilton.com

This 13th day of April, 2023